UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

MIFAB PLUMBING INNOVATIONS, LLC
and MIFAB, INC.,

          Plaintiffs,

v.

LIQUIDBREAKER, LLC,

          Defendant,

v.

MIFAB PLUMBING INNOVATIONS, LLC,
MIFAB, INC., MICHAEL WHITESIDE,
MIKE BELLAVANCE, TOM WILLIS,
and Does 1-10,

          Counterclaim-Defendants.

**<u>ANSWER TO COUNTERCLAIMS</u>**

Case No. 1:15-cv-04279

Hon. James B Zagel
Presiding Judge

JURY TRIAL DEMANDED

       MIFAB Plumbing Innovations, LLC, MIFAB, Inc., Michael Whiteside, Mike Bellavance

and Tom Willis (collectively, the "Counterclaim-Defendants"), by their attorneys, Phillips Lytle

LLP, hereby answer the Counterclaims of LiquidBreaker, LLC ("LiquidBreaker") as follows:

       59.    By way of background, the matter comes before the Court based upon
counterclaims that are related to an adversary proceeding in the United States Bankruptcy Court
for the Southern District of California filed by LiquidBreaker on August 20, 2014, with assigned
Adversary Proceeding No. 14-90158-CL (the "Prior Adversary Proceeding"). The Prior
Adversary Proceeding related to LiquidBreaker's request for declaratory relief and rescission of
a post-petition, out of the-ordinary course contract. Specifically, it related to the Exclusive
Distribution Agreement ("EDA") between LiquidBreaker and MIFAB. The Prior Adversary
Proceeding resulted in execution of the Termination Agreement between LiquidBreaker and
MIFAB executed on or about December 1, 2014. The Termination Agreement involved a mutual
termination of the EDA by the parties as expressly proposed in light of the California
Bankruptcy Court's Tentative Ruling partially denying MIFAB's motion to dismiss the Prior
Adversary Proceeding. Upon execution of the Termination Agreement, a stipulation for
dismissal was filed by the parties and the Prior Adversary Proceeding was dismissed with
prejudice on December 2, 2014 (Docket Entry No. 18). These counterclaims are filed as a result

of breaches by MIFAB of the Termination Agreement and other subsequent misconduct as described in this pleading. Equitable relief is sought to enjoin MIFAB from further misconduct and for specific performance under the Termination Agreement. Compensatory and punitive damages are also sought for ill-gotten gains by MIFAB as a result of their unfair competition and other tortious misconduct in the marketplace by MIFAB in violation of federal law and Illinois state law, as set forth hereinbelow.

**Answer:** Counterclaim-Defendants admit that MIFAB Plumbing Innovations, LLC and LiquidBreaker were parties in the Prior Adversary Proceeding, the pleadings, orders and proceedings of which speak for themselves; and that MIFAB Plumbing Innovations, LLC and LiquidBreaker were parties to the EDA and Termination Agreement, which documents speak for themselves. Counterclaim-Defendants deny any breach, misconduct, unfair competition, tortious misconduct or ill-gotten gains by Counterclaim-Defendants; deny that LiquidBreaker is entitled to specific performance, damages or any relief; any deny all other allegations in paragraph 59 of the Counterclaims.

## PARTIES

60.     LiquidBreaker is a California limited liability company.

**Answer:** Admitted.

61.     LiquidBreaker is informed and believes, and thereon alleges, that at all relevant times the Counter-Defendant identified as:

(a)     MIFAB Plumbing Innovations, LLC is and has been an Illinois limited liability company with its principal place of business in Chicago, Illinois; and

(b)     MIFAB, Inc. is and has been a Delaware corporation with its principal place of business in Chicago, Illinois; and

(c)     Michael Whiteside is an individual, whose residence address is presently unknown, who is and has been President of one of more of said MIFABs, who dominates and controls its activities, and who specifically has directed at least a material portion of the tortious conduct alleged herein, and who thus is individual liable therefor; and

(d)     Mike Bellavance is an individual, whose residence address is presently unknown, who is and has been Chief Operating Officer of one of more of said MIFABs, who dominates

and controls its activities, and who specifically has directed at least a material portion of the tortious conduct alleged herein, and who thus is individual liable therefor; and

    (e)    Tom Willis is an individual, whose residence address is presently unknown, who is and has been National Sales Manager of one of more of said MIFABs, and who specifically has directly committed at least a material portion of the tortious conduct alleged herein, and who thus is individual liable therefor; and

    (f)    Does 1-10 are corporate or other entities, including individuals, whose identities are presently unknown, whose identities are expected to be revealed in discovery from MIFAB, who have substantially participated in the tortious conduct alleged herein against MIFAB, and who thus under principles of law and equity are also responsible therefor.

    **Answer:** Counterclaim-Defendants admit paragraphs 61(a) and 61(b); and admit that Michael Whiteside is President, that Mike Bellavance is Chief Operating Officer, and that Tom Willis is National Sales Manager of MIFAB Plumbing Innovations, LLC and/or MIFAB, Inc. Counterclaim-Defendants deny that any Counterclaim-Defendant engaged in any tortious conduct; deny that any individual defendant directly committed a material portion of the alleged tortious conduct or is liable for any alleged tortious conduct; lack sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 61(f), and therefore deny same; any deny all other allegations in paragraph 61 of the Counterclaims.

    62.    Jurisdiction and venue are both proper before the Court, inasmuch as MIFAB Plumbing Innovations, LLC, and MIFAB, Inc., have submitted themselves to the jurisdiction of the Court by the filing of a Complaint herein. Also, and as for all Counter-Defendants, there is diversity jurisdiction, inasmuch as there is complete diversity between the parties, and thus the Court has diversity jurisdiction over the instant action pursuant to 28 U.S.C. §1332, inasmuch as the respective parties are citizens of different states and/or a foreign state, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. Further, and as to all Counter-Defendants, there is also federal subject matter inasmuch as this is an action for federal unfair competitions under 15 U.S.C. §1125(a)§43(a) of the Lanham Act, and with this Court having supplemental jurisdiction over the claims herein which arise under the statutory and common law of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative fact. Moreover, venue is proper herein pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

**Answer:** Paragraph 62 of the Counterclaims states legal conclusions to which no response is required. To the extent a responsive pleading is required, Counterclaim-Defendants admit that personal jurisdiction and venue are both proper before the Court; and that the Court has subject matter jurisdiction over this action.

## GENERAL ALLEGATIONS
### A. Background Facts

63. LiquidBreaker filed its petition for relief under Chapter 11 of the Bankruptcy Code on September 13, 2012.

**Answer:** Admitted.

64. Prior to confirmation of the Plan of Reorganization, LiquidBreaker had finished development of a product called "the Green Drain System". The inventor of the Green Drain System, Giovanni Fima, was awarded a patent (assigned to LiquidBreaker) for the Green Drain System on March 8, 2011, which was designated as United States Patent No. 7,900,288 (the "Patent"). A true and correct copy of the Patent as available on the United States Patent and Trademark Office is attached hereto as Exhibit "B". This product has now been made available to the market and is intended to produce significant income for LiquidBreaker as it operates under its plan of reorganization.

**Answer:** Counterclaim-Defendants admit that United States Patent No. 7,900,288 issued on March 8, 2011, which patent (Exhibit B) speaks for itself; and lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 64 of the Counterclaims, and therefore deny same.

65. LiquidBreaker submitted its First Amended Plan (the "Plan") on August 14, 2013. The First Amended Disclosure Statement (the "Disclosure Statement") was filed on July 22, 2013. The Disclosure Statement provides that the LiquidBreaker anticipates that the Green Drain will be its flagship product: "The Green Drain System is LiquidBreaker's most recently release product, however, strong initial sales indicate that the Green Drain System may be the LiquidBreaker's flagship product moving forward." (See Docket Number 151, Section I). The Disclosure Statement further provides that the LiquidBreaker owns the patents to the Green Drain and that it would continue to own the Green Drain throughout the plan (See Docket Number 151, Section V). Finally, the feasibility analysis indicates that LiquidBreaker's ability to reorganize would be dependent upon the on-going sales of the Green Drain and, to a more limited extent, to the sale of the Green Cartridge as limited by the Settlement Agreement with Falcon (See Docket Number 151, Section X(C)(2)).

**Answer:** The Plan, the Disclosure Statement and the feasibility analysis speak for themselves. Counterclaim-Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 65 of the Counterclaims, and therefore deny same.

66. The Plan was approved by the Bankruptcy Court on September 9, 2013.

**Answer:** Admitted.

67. During the pendency of the Bankruptcy, and prior to confirmation of the Plan, LiquidBreaker, through its then Reorganization Officer, Rick LaPointe, entered into the EDA with MIFAB. The EDA, entered into on July 19, 2013 purportedly provided for the appointment of MIFAB as the exclusive distributor for the entire "Green Drain" product line, including any items which may be developed in the future in the plumbing industry. The EDA provided that only MIFAB could sell to the plumbing industry, including any and all plumbing wholesalers, plumbing contractors, plumbing representatives and catalog supply wholesalers in the "Territory", as defined in the EDA to include numerous countries around the world.

**Answer:** Counterclaim-Defendants admit that MIFAB Plumbing Innovations, LLC and LiquidBreaker were parties to the EDA, which was entered into on July 19, 2013, which document speaks for itself. Counterclaim-Defendants deny any allegations inconsistent with the terms and conditions of the EDA; and deny the remaining allegations in paragraph 67 of the Counterclaims.

68. Although the EDA, and all of its provisions, has been fully terminated and cancelled, certain representations and inducements made by MIFAB within the context of the EDA remain relevant in light of its subsequent conduct and the representations MIFAB has made in the marketplace about LiquidBreaker and LiquidBreaker's patent. The substance of the EDA was the grant of a mere license to MIFAB of LiquidBreaker's technology, and neither the EDA nor the Termination Agreement had purported to sell or to assign any portion or aspect of LiquidBreaker's intellectual property to MIFAB. The relevant provisions of the EDA include the following:

    1. Defined Terms: In this Agreement, the following terms shall have the following meanings:

(h) "Product" means each specific item included in the Product Line (including those items that may he added from time to time) and "Products" means more than one such Product;

(j) "Product Line" means all items included in LiquidBreaker's "Green Drain" product line, including all items which may be further included or added to such Product Line from time to time. LiquidBreaker agrees to produce or manufacture its "Green Drain" Product Line as a MIFAB branded "MI-GARD" product with the MIFAB/MI-GARD part number, country of origin and UPC mark molded into each Product and individual and multi box pack…

9. License:

(e) LiquidBreaker gives and grants to MIFAB a personal, fully paid up, royalty-free license to practice the inventions claimed in [the Patent] as set out on Schedule "D" … for the sole purpose of selling the Products during the term of this agreement.

(f) LiquidBreaker represents and warrants to MIFAB that LiquidBreaker is the sole owner of the inventions covered by [the Patent] and that is has the sole right to grant the license granted hereunder. …

(h) MIFAB covenants with LiquidBreaker that MIFAB will not during or after the subsistence of this license raise or cause to be raised any question concerning or any objection to the validity of any claim in [the Patent] on any grounds whatsoever.

(i) Save and except for the rights granted to MIFAB in this Agreement, MIFAB acknowledges that LiquidBreaker has not granted to MIFAB any other intellectual property rights in the Products or any other intellectual property of LiquidBreaker.

**Answer:** The EDA speaks for itself. Counterclaim-Defendants deny any allegations inconsistent with the terms and conditions of the EDA; and deny the remaining allegations in paragraph 68 of the Counterclaims.

69. MIFAB further acknowledged in the EDA at paragraph 18 that LiquidBreaker possessed all rights to the Product Line, "including without limitation all intellectual property, patent rights (including the Patents), molds, supply contracts and any other asset related to the Product Line"; and MIFAB yet further acknowledged that, if it were subsequently to compete with LiquidBreaker, it would agree not to infringe upon "any patents, trademarks or other intellectual property held by LiquidBreaker, including [the Patent]".

- 6 -

**Answer:** The EDA speaks for itself. Counterclaim-Defendants deny any allegations inconsistent with the terms and conditions of the EDA; and deny the remaining allegations in paragraph 69 of the Counterclaims.

70. The Termination Agreement also contained covenants and representations by the parties that intended to effectuate a complete break with the licensing arrangement set forth in the EDA and, instead, would preclude MIFAB from using its own marks on the Green Drain System. Relevant provisions of the Termination Agreement are, as follows:

6. Notwithstanding the foregoing or anything to the contrary:

(d) Both MIFAB and LiquidBreaker covenant that the only public comment that may be made with respect to the termination of the Distribution Agreement shall be that MIFAB and LiquidBreaker have agreed to terminate the Distribution Agreement and each is free to pursue their business interests as each sees fit.

7. Except for obligations created by this Agreement, there shall be no ongoing restrictions or other continuing obligations of MIFAB to LiquidBreaker or LiquidBreaker to MIFAB. For clarification of the foregoing, the termination of the Distribution Agreement shall terminate all rights, obligations and duties of the parties under the Distribution Agreement, including but not limited to the following:

(a) Any and all Licenses granted or received as provided in paragraph 9(a) through (I) of the Distribution Agreement, including any indemnity rights;

(b) Any exclusive distributorship rights and restrictions on sales whether geographical or type of service related as provided in paragraph 2(a) through (e) of the Distributorship Agreement;

(c) Any product branding in favor of MIFAB as provided in paragraph 8(a) and (b) of the Distributorship Agreement;

**Answer:** The Termination Agreement speaks for itself. Counterclaim-Defendants deny any allegations inconsistent with the terms and conditions of the Termination Agreement; and deny the remaining allegations in paragraph 70 of the Counterclaims.

71.    The Prior Adversary Proceeding dealt in detail with LiquidBreaker's history with MIFAB and the EDA after Jason Bocchino had taken over as Chief Executive Officer and Reorganization Officer of LiquidBreaker. As detailed in the operative pleading in that matter, the lack of cooperation that LiquidBreaker received from MIFAB was continuous and pervasive. Specifically, MIFAB has resolutely, continuously, and in bad faith refused to respect LiquidBreaker's lawful rights. In light of the Court's Tentative Ruling (Prior Adv. Docket No. 14), the Prior Adversary Proceeding did continue; whereupon, MIFAB determined to abandon the EDA, and thereafter proposed the Termination Agreement. However, unbeknownst to LiquidBreaker, at the time MIFAB had proposed the Termination Agreement MIFAB fully intended to breach the Termination Agreement *ab initio* and to continue unlawfully marketing the Green Drain System using its own branding, packaging and manufacture.

**Answer:**  The pleadings, orders and proceedings in the Prior Adversary Proceeding speak

for themselves.  Counterclaim-Defendants deny any allegations inconsistent therewith; and deny

the remaining allegations in paragraph 71 of the Counterclaims.

72.    In proposing the Termination Agreement, MIFAB concealed and withheld from disclosure material facts about its plans. Moreover, if MIFAB's plans for further sales of the Green Drain under the "MI-GARD" mark had not been fraudulently concealed from LiquidBreaker, LiquidBreaker never would have granted MIFAB the induced release and/or waiver. Indeed, MIFAB 's conduct subsequent violates the objective intent behind the Termination Agreement, and yet further demonstrates that MIFAB had all along the covert intent to violate LiquidBreaker's intellectual property rights, and thus to preclude LiquidBreaker from participating in the marketplace.

**Answer:**  Denied.


## B. Mifab Unlawfully Re-Certifies the  Green Drain

73.    MIFAB has unlawfully continued to sell the Green Drain under its MI-GARD mark. LiquidBreaker is informed and believes that, even before termination of the EDA, and unbeknownst to LiquidBreaker, MIFAB had contacted another manufacturer to produce the MI-GARD (Green Drain) and to manufacture the exact same product as its own-- and which is in violation of both the EDA and then the Termination Agreement. In or about July of 2014, and as a part of its scheme (i) to defraud LiquidBreaker, and (ii) to violate the EDA, MIFAB fraudulently induced IAPMO Research and Testing, Inc. to de-list LiquidBreaker from certification as manufacturer of the product. In December of 2014, after executing the Termination Agreement, MIFAB then fraudulently re-certified the same product with LiquidBreaker's Patent listed thereon and associated therewith, and spuriously listing itself as manufacturer. A true and correct copy of the Certificate of Listing is attached hereto as Exhibit "C".

**Answer:**  Denied.

- 8 -

74.   When LiquidBreaker became aware of this purported "recertification", its counsel promptly contacted counsel for MIFAB, and requested identification of the alleged authority upon which MIFAB was attempting to rely for its "re-certification" of the Green Drain after having removed LiquidBreaker from the listing. Moreover, LiquidBreaker requested a good faith representation that the products being sold were products originally purchased from LiquidBreaker, and not newly-manufactured, falsified "Green Drain" units. Despite repeated attempts to obtain a response from Mr. Sims, he has failed to respond. A true and correct copy of a January 20, 2015 e-mail from Mr. Smaha to Mr. Sims is attached hereto as Exhibit "D".

**Answer:**   Counterclaim-Defendants admit that Exhibit D was sent, which document speaks for itself.  Counterclaim-Defendants deny that the Green Drain was re-certified; deny that Green Drain units were falsified; and deny the remaining allegations in paragraph 74 of the Counterclaims.

75.   LiquidBreaker is further informed and believes that representatives of MIFAB have attended meetings sponsored by the Omni Corporation, a national network of independent wholesalers in the plumbing and heating industries, and represented both that (1) MIFAB had supposedly won the Prior Adversary Proceedings (which is false); and that (2) MIFAB owns the Patent (also, which is false). Upon information and belief, MIFAB have also made these representatives at other trade conferences and conventions.  IAPMO has also informed LiquidBreaker that, because MIFAB has represented that it owns the Patent, IAPMO is not legally permitted to allow LiquidBreaker to put its own name on its very own Green Drain product.  MIFAB have thus intentionally and unlawfully interfered with Liquid- Breaker's ability to certify its own Green Drain System, and has done so, *inter alia,* by fraudulently misrepresenting the material fact that MIFAB supposedly owns the Patent.

**Answer:**   Counterclaim-Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations relating to information provided to LiquidBreaker by IAPMO, and therefore deny same; and deny the remaining allegations in paragraph 75 of the Counterclaims.

76.   Yet further, MIFAB has acquired trade secrets from LiquidBreaker concerning, *inter alai,* the manufacturing data for the Green Drain, and did so during the period of time MIFAB was licensing the technology from LiquidBreaker, thus constituting circumstances that gave rise to a duty to maintain the secrecy of the disclosures and/or to limit their use. MIFAB have abused the confidential relationship of contracting parties, and instead conspiratorially chose to nullify the EDA and to deceive and to defraud LiquidBreaker by transferring its manufacturing to a non-LiquidBreaker facility, thereby in order to continue to fraudulently market the Green Drain under the MIFAB trademark, in overt violation of the

Termination Agreement, and furthermore without the payment of any royalties or other compensation of any kind to LiquidBreaker.

**Answer:** Denied.

### C. Mifab's Defamatory Statements Against LiquidBreaker

77.    As set forth hereinabove, MIFAB has agreed that the only public comments that MIFAB could lawfully make with respect the termination of the EDA were (i) that MIFAB and LiquidBreaker had agreed to terminate the EDA, and (ii) that each is free to pursue their business interests as each sees fit. In violation of its agreement, MIFAB has told member of the plumbing industry precisely the opposite. For instance, Tom Willis, MIFAB's National Sales Manager, published an open letter to plumbing distributors and sales representatives dated January 7, 2015 with clear purposes of (i) misrepresenting the facts, and (ii) defaming LiquidBreaker throughout the industry.

**Answer:** The EDA and Termination Agreement speak for themselves. Counterclaim-

Defendants deny any allegations inconsistent with the terms and conditions of the EDA or the

Termination Agreement; and deny the remaining allegations in paragraph 77 of the

Counterclaims.

78.    A true and correct copy of the letter from Mr. Willis is attached hereto as Exhibit "E". MIFAB misrepresentations to members of the relevant public, including plumbing industry representatives, include the following:

> a. "LiquidBreaker went to the bankruptcy court and asked that our agreement be terminated. The court in no uncertain terms up held [sic] the existing contract and LiquidBreaker lost the decision." - This representation of MIFAB to the trade is utterly false, and in fact, MIFAB had lost significant portions of it motion to dismiss in the prior proceeding before the Bankruptcy Court, thereby inducing MIFAB itself to propose the Termination Agreement.

> b.  "We sent LiquidBreaker a new purchase order for product.
> They would not honor the price or the agreement despite the court ruling."
> - This is also a false statement, as there was no such ruling, and in fact LiquidBreaker had fully and properly honored purchase orders during the term of the EDA.

> c. "We quickly moved to another supplier, have product in stock from this supplier, and in fact have been shipping this product for the last six

weeks". ─ This is an admission that MIFAB had surreptitiously and covertly set up a separate manufacturing facility to manufacture the Green Drain, in violation of the Termination Agreement -- and despite the circumstances of trust and confidence under which MIFAB had acquired LiquidBreaker's manufacturing and other trade secret data. By use of the word "supplier", LiquidBreaker is informed and believes that in actuality MIFAB is referring to its secret manufacturing contractor.

d. "We terminated the contract with LiquidBreaker." ─ This is a yet further materially false representation, as the Termination Agreement was a *mutual* termination, and in fact a termination based upon MIFAB's fraudulent misrepresentations and concealments.

e. "The 'Green Drain'/LiquidBreaker is not IAPMO approved and is not listed by IAPMO." ─ In fact, the only reason LiquidBreaker has not been re-listed is because MIFAB wrong- fully de-listed LiquidBreaker in violation of the EDA, although the listing that MIFAB is using is for the *exact* same product -- *i.e.,* **LiquidBreaker's** Green Drain System.

    **Answer:** Exhibit E speaks for itself. Counterclaim-Defendants deny any allegations

inconsistent with Exhibit E; and deny the remaining allegations in paragraph 78 of the

Counterclaims.

    79. Mr. Willis further misrepresents the following to the trade: "I have to ask you: do you really want to purchase a product from a company in bankruptcy, that has proven they will not honor their word, is not IAPMO listed, and will sell everyone [sic] in your territory direct (Plumber, Wholesaler or other Reb)?" This statement of MIFAB constitutes intentional and culpable trade libel. Moreover, by overtly referring to the bankruptcy, MIFAB knowingly and falsely intend to slander LiquidBreaker, to its commercial detriment.

    **Answer:** Denied.

### D. Mifab's Material Misrepresentations to the Public

    80. Moreover, MIFAB fraudulently markets the Green Drain under its "Mi-Gard" mark as a "patented product". And, the patent that MEFAB misuses for this unlawful purpose is **LiquidBreaker's** patent. A true and correct of page 14 from MIFAB 's TSP-2015 catalog is attached hereto as Exhibit "F". The statement "U.S. Patent # 7,900,288" is clearly set forth in MIFAB's catalog as a representation to the purchasing public. Of course, this is yet further evidence that it is in fact **LiquidBreaker's** Green Drain that MIFAB is

marketing to the public, and MEFAB is estopped to argue otherwise. It is also evidence, however, of the fact that MIFAB is engaging in a yet enhanced level of unfair competition that unlawfully uses a competitor's patent to market that competitor's product as its own product. MIFAB 's such misconduct constitutes, *inter alia,* unlawful palming-off and false advertising, and particularly inasmuch as MIFAB is misleadingly using its own mark together *with* LiquidBreaker's Patent number. Thus, MIFAB 's use of the Patent is a blatant and clear violation of LiquidBreaker's intellectual property rights, further including *inter alia,* the tortious conduct of false patent marking and false advertising.

      **Answer:** Denied.

      81.    Once again, LiquidBreaker has directed the falsehoods of MIFAB 's false publication (and which is available on MIFAB's website) to MIFAB's attention, and has done so in an effort to avoid litigation, but MIFAB has refused to respond.

      **Answer:** Denied.

## Count 1 - (For Breach of Contract and Specific Performance)

      82.    LiquidBreaker incorporates herein by reference the foregoing paragraphs 50-81, as if fully set forth below.

      **Answer:** Counterclaim-Defendants restate the answers set forth in paragraphs 59-81

above. No answer or response is required for paragraphs 50-58.

      83.    Based upon the forgoing, a written contract by virtue of the Termination Agreement was formed between LiquidBreaker and MIFAB, who were parties capable of contracting; there was a clear, lawful object and sufficient cause or consideration such that all necessary prerequisites were satisfied; and the express terms of the contract were sufficiently certain as stated in the oral and written statements between the parties to provide a basis for determining the existence of a breach. Relevant and material terms of the contract were clear and unambiguous, and confirmed by both parties to the contract in writing and a full agreement was derived in the acceptance of a sufficiently definite proposal.

      **Answer:** Paragraph 83 of the Counterclaims states legal conclusions to which no

response is required. To the extent a responsive pleading is required, Counterclaim-Defendants

admit that MIFAB Plumbing Innovations, LLC and LiquidBreaker were parties to the

Termination Agreement, which document speaks for itself; admit that MIFAB Plumbing

Innovations, LLC was capable of contracting; and lack sufficient knowledge or information to

form a belief as to the truth of the remaining allegations in paragraph 83.

84.     The consideration set forth in the Termination Agreement was fully and fairly bargained for and reflected the fair and reasonable value of the performance by MIFAB -- *i.e.,* that any product branding in favor of MIFAB related to the Green Drain would immediately cease at the time the Termination Agreement was entered into. And, in fact, the existence of Termination Agreement was the proximate cause for dismissal of the Prior Adversary Proceeding. Moreover, the Termination Agreement was and is, as to MIFAB, just and reasonable.

**Answer:** Paragraph 84 of the Counterclaims states legal conclusions to which no

response is required. To the extent a responsive pleading is required, Counterclaim-Defendants

admit that MIFAB Plumbing Innovations, LLC and LiquidBreaker were parties to the

Termination Agreement, which document speaks for itself; ; and lack sufficient knowledge or

information to form a belief as to the truth of the remaining allegations in paragraph 84.

85.     Since execution of the Termination Agreement, MIFAB has continuously breached the contract by engaging in the conduct provided above, including by re-certifying the Green Drain under its own name and marketing the patented product as its own brand name, despite the fact that it had only gained access to confidential and trade secret information (including the manufacturing data and molds for the product) as a result of its contractual relationship with LiquidBreaker. LiquidBreaker is informed and believes that MIFAB, in violation of its contractual obligations under the EDA in force at the time, had surreptitiously tooled another facility to mass produce the Green Drain for its own branding and had concealed this fact from LiquidBreaker prior to execution of the Termination Agreement. MIFAB's such conduct is also a violation of MIFAB 's implied covenant of good faith and fair dealing, inasmuch as it knowingly entered into the Termination Agreement without the present intent of performing it, and indeed with the intent to immediately breaching it, using it as a facade to obtain a release while withholding material facts from (i) LiquidBreaker, and (ii) the Bankruptcy Court- thereby, also committing a fraud on the Bankruptcy Court.

**Answer:** Denied.

86.     LiquidBreaker has fully performed all conditions, covenants, and promises to be performed on the part of LiquidBreaker under the Termination Agreement.

**Answer:** Denied.

87.     Pursuant to the terms of the Termination Agreement, MIFAB covenanted and agreed with LiquidBreaker to perform the following:

- 13 -

a) To state in reference to the Termination Agreement <u>only</u> that **"MIFAB and LiquidBreaker have agreed to terminate the Distribution Agreement";**

b) That **"[a]ny and all Licenses granted or received as provided in paragraph 9(a) through (I) of the Distribution Agreement"**, and any rights granted by such licenses, have been terminated;

c) That **"[a]ny product branding in favor of MIFAB as provided in paragraph 8(a) and (b) of the Distributorship Agreement"** would immediately cease.

**Answer:** The Termination Agreement speaks for itself. Counterclaim-Defendants deny any allegations inconsistent with the terms and conditions of the Termination Agreement; and deny the remaining allegations in paragraph 87 of the Counterclaims.

88. These contractual terms required MIFAB to refrain from designated and defined conduct. These covenants are unique, and, therefore, it may be shown that LiquidBreaker has adequate remedy at law. Therefore, LiquidBreaker seeks not only damages for breach of contract, by also the equitable remedy of specific performance, and hence requests that the Court issue an Order mandating that MIFAB abide by these clearly defined contract terms.

**Answer:** Paragraph 88 of the Counterclaims states legal conclusions to which no response is required. The Termination Agreement speaks for itself. Counterclaim-Defendants deny any allegations inconsistent with the terms and conditions of the Termination Agreement; deny that LiquidBreaker is entitled to damages or specific performance or the requested Order; and deny the remaining allegations in paragraph 88 of the Counterclaims.

89. Wherefore, LiquidBreaker is entitled to specific performance of the Termination Agreement on the part of MIFAB.

**Answer:** Denied.

90. Accordingly, LiquidBreaker is entitled to injunctive relief under applicable law. Unless and until enjoined and restrained by order of this Court, this conduct of MIFAB will continue to cause grave and irreparable injury to LiquidBreaker in that LiquidBreaker will be deprived of the benefit of the bargain provided for in the Termination Agreement – and, namely, that MIFAB would cease branding the Green Drain as its own product.

- 14 -

**Answer:** Denied.

91. Also, LiquidBreaker has no adequate remedy at law for MIFAB 's misconduct, in that it may prove to be impossible for LiquidBreaker to determine the precise amount of damages it will suffer if MIFAB 's threatened conduct is not restrained, and thus LiquidBreaker will be deprived of the benefit of the bargain provided for in the Termination Agreement, namely, that MIFAB would cease branding the Green Drain as its own product.

**Answer:** Denied.

## Count 2 – (Common Law Fraud)

92. LiquidBreaker incorporates herein by reference the foregoing paragraphs 50-91, as if fully set forth below.

**Answer:** Counterclaim-Defendants restate the answers set forth in paragraphs 59-91

above. No answer or response is required for paragraphs 50-58.

93. MIFAB's above misconduct in intentionally making materially false representations, upon which LiquidBreaker had the right to rely, and upon which LiquidBreaker had been induced by MIFAB to rely, have been to LiquidBreaker's material damage and detriment, and thus constitute intentional fraud in violation of the common law of the State of Illinois and elsewhere.

**Answer:** Denied.

94. Yet further, MIFAB 's above-said undertakings and commitments, that included misrepresentations and underlying material concealments, were entered into by MIFAB without the present intent to perform thereunder, and as such yet further constitute intentional fraud in violation of the common law of the State of Illinois and elsewhere.

**Answer:** Denied.

95. Such acts of intentional fraud by MIFAB subject MIFAB to the payment of damages and punitive damages in an amount determined by the jury at trial.

**Answer:** Denied.

## Count 3 - (Trade Libel)

96. LiquidBreaker incorporates herein by reference the foregoing paragraphs 50-95, as if fully set forth below.

**Answer:** Counterclaim-Defendants restate the answers set forth in paragraphs 59-95

above. No answer or response is required for paragraphs 50-58.

97. Trade libel occurs through the publication of a false statement that intentionally disparages the quality of property and induces another not to deal with the libeled party, which causes actual pecuniary damage. To constitute trade libel, the statement must be false, and the statement must disparage the quality of the libeled party's products or services. Publication occurs when the libeler communicates the false statements to other persons or entities orally or in writing.

**Answer:** Paragraph 97 of the Counterclaims states legal conclusions to which no

response is required.

98. As alleged above, MIFAB has made the following false and disparaging statements to entities and individuals throughout the plumbing industry:

   a. MIFAB had won the Prior Adversary Proceeding;

   b. MIFAB now owns the Patent;

   c. MIFAB unilaterally terminated the EDA; and

   d. LiquidBreaker breached the EDA and cannot be trusted to do business with

   (i) for these purported reasons, and (ii) because LiquidBreaker is in bankruptcy.

**Answer:** Denied.

99. Each of MIFAB's statements is false and disparaging to LiquidBreaker and was made with the express and clear intent to induce others not to deal with LiquidBreaker. MIFAB has been successful in this effort, inasmuch as MIFAB has misappropriated nearly 100% of the United States market for LiquidBreaker's Green Drain product.

**Answer:** Denied.

100. LiquidBreaker is also entitled to injunctive relief under applicable law. Specifically, unless and until enjoined and restrained by order of this Court, the unlawful conduct of MIFAB will continue to cause grave and irreparable injury to LiquidBreaker in the loss of customers, revenues and goodwill.

**Answer:** Denied.


## Count 4 – (Misappropriation of Trade Secrets)

101. LiquidBreaker incorporates herein by reference the foregoing paragraphs 50-100, as if fully set forth below.

- 16 -

**Answer:** Counterclaim-Defendants restate the answers set forth in paragraphs 59-100 above. No answer or response is required for paragraphs 50-58.

102. As a result of MIFAB 's former and albeit fraudulently-gained position as the exclusive distributor for LiquidBreaker's Green Drain System, it had induced for itself access to, and had gained knowledge of, trade secrets and confidential and proprietary information data that are the property of LiquidBreaker, including, without limitation, the following:

> a. detailed information related to the manufacturing procedures/data and processes of the Green Drain System, including but not limited to, molds, tooling data and software associated with the designs;
>
> b. details of the techniques and materials used in the production of LiquidBreaker's products; and
>
> c. knowledge of customer preferences for the Green Drain.

**Answer:** Denied.

103. Each of these trade secrets derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and are the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

**Answer:** Denied.

104. A basis of protection is the existence of a relationship between the trade secret owner and the one using or disclosing the trade secret (or threatening to do so). This relationship can be created by an express contract, such as a license agreement that applied in this case by virtue of the EDA. As such, MIFAB had fraudulently, through concealment and artifice, learned the intimate and secret details of the manufacturing and distribution of the Green Drain System sufficient to allow it to contract with illicit, non-LiquidBreaker sourcing for subsequent production of the Green Drain product, which it had done without contemporaneous or subsequent disclosure, thus permitting MIFAB to fraudulently induce the Termination Agreement. Liquid Breaker's trade secret and confidential information data, comprising the product design, testing and manufacturing data/processes, construction materials, manufacturing agreements with other companies, as misappropriated by MIFAB, are all within the definition of "trade secrets and commercial or financial information" that are "privileged or confidential" under federal and Illinois state law. See, *e.g.,* Illinois Trade Secrets Act, 765 ILCS 1065/ *et seq.*

**Answer:** Paragraph 104 of the Counterclaims states legal conclusions to which no response is required. To the extent a response is required, Counterclaim-Defendants deny all

allegations in paragraph 104 of the Counterclaims.

105.    Plaintiff is informed and believes and therefore alleges that, while still operating (albeit surreptitiously) under the EDA, MIFAB had misappropriated, used and disclosed to others, some or all of the trade secrets and confidential and proprietary information that it obtained from LiquidBreaker as a result of its contractual and confidential relationship with LiquidBreaker. In this manner, MIFAB misused the trade secrets of LiquidBreaker, without any express or implied consent, and despite acquiring LiquidBreaker's trade secrets under circumstances that gave rise to a duty in MIFAB to maintain their secrecy and/or limit their use to the terms of the license that MIFAB had been granted.

**Answer:**  Denied.

106.    Plaintiff is further informed and believes and therefore alleges that, in the course of competing with plaintiff, MIFAB unlawfully used the trade secrets and confidential and proprietary information of LiquidBreaker. This wrongful misappropriation by MIFAB and wrongful use by MIFAB and/or its affiliates, of LiquidBreaker's trade secrets and confidential and proprietary information entrusted to MIFAB have given by MIFAB, or other affiliate(s), a substantial competitive advantage to which MIFAB is not entitled, thereby fully justifying imposition of appropriate injunctive relief and grant of damages.

**Answer:**  Denied.

107.    Defendants' above practices were willful and malicious. Therefore, plaintiff is further entitled to an award of exemplary damages under the Illinois Trade Secrets Act, 765 ILCS 1065/4(b), and reasonable attorney's fees pursuant to the Illinois Trade Secrets Act, 765 ILCS 1065/5.

**Answer:**  Denied.


**Count 5 - (Intentional Interference with Prospective Economic Advantage)**

108.    LiquidBreaker incorporates herein by reference the foregoing paragraphs 50-107, as if fully set forth below.

**Answer:**  Counterclaim-Defendants restate the answers set forth in paragraphs 59-107

above.  No answer or response is required for paragraphs 50-58.

109.    A claim for relief exists for intentional interference with another's prospective business advantage where the tortfeasor has disrupted the business relationship of another by improper methods that fall outside the boundaries of fair competition.

**Answer:**  Paragraph 109 of the Counterclaims states legal conclusions to which no

response is required.

110.    LiquidBreaker possessed existing business relationships with clients and customers in the plumbing industry that had previously purchased its Green Drain System products, and prospective business relationships with clients and customers that MIFAB have wrongful acquired through its misconduct as alleged herein. There was a probability of a future economic benefit from these business relationships with independent salespersons, wholesalers and other distributors of plumbing products.

**Answer:** Denied.

111.    Significant injurious interference has in fact occurred such that MIFAB has (albeit unlawfully) acquired nearly 100% of the United States market for LiquidBreaker's Green Drain System products. MIFAB 's libelous comments, misappropriation of trade secrets, wrongful use of the Patent to block LiquidBreaker's certification of the Green Drain by IAPMO, and false advertising to LiquidBreaker's customer base, all constitute wrongful conduct separate from the interference itself, and fall outside the boundaries of privileged and/or fair competition. At all times, MIFAB knew of, and intended to interfere with, LiquidBreaker's prospective business advantage, and its conduct has caused immense damage to LiquidBreaker. Significant injurious interference has in fact occurred such that MIFAB has (albeit unlawfully) acquired nearly 100% of the United States market for LiquidBreaker's Green Drain System products. MIFAB 's libelous comments, misappropriation of trade secrets, wrongful use of the Patent to block LiquidBreaker's certification of the Green Drain by IAPMO, and false advertising to LiquidBreaker's customer base, all constitute wrongful conduct separate from the interference itself, and fall outside the boundaries of privileged and/or fair competition. At all times, MIFAB knew of, and intended to interfere with, LiquidBreaker's prospective business advantage, and its conduct has caused immense damage to LiquidBreaker.

**Answer:** Denied.

112.    LiquidBreaker is entitled to injunctive relief under applicable law and compensatory and exemplary damages to the extent allowed by law.

**Answer:** Denied.

## Count 6 – (Common Law Unfair Competition)

113.    LiquidBreaker incorporates herein by reference the foregoing paragraphs 50-112, as if fully set forth below.

**Answer:** Counterclaim-Defendants restate the answers set forth in paragraphs 59-112

above. No answer or response is required for paragraphs 50-58.

114.    The foregoing actions of MIFAB constitute unfair competition under the common law of the State of Illinois.

**Answer:** Denied

115.    As a direct and proximate result of MIFAB's unlawful acts, Liquid Breaker has been damaged in an amount to be determined at trial.

**Answer:** Denied

116.    Unless enjoined by the Court, MIFAB's unlawful acts will continue to cause irreparable damages, loss and injury to LiquidBreaker for which it has no adequate remedy at law.

**Answer:** Denied.

### Count 7 - (Violation of 815 ILCS 510 *et seq.*)

117.    LiquidBreaker incorporates herein by reference the foregoing paragraphs 50-116, as if fully set forth below.

**Answer:** Counterclaim-Defendants restate the answers set forth in paragraphs 59-116

above.  No answer or response is required for paragraphs 50-58.

118.    The foregoing actions of MIFAB constitute a violation of Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510 *et seq.*

**Answer:** Denied.

119.    Under the Illinois Uniform Deceptive Trade Practices Act, "[a] person engages in a deceptive trade practice when, in the course of his or her business, vocation or occupation, the person … causes a likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services." 815 ILCS 510/2(a)(2).

**Answer:** Admitted.

120.    MIFAB's conduct has caused LiquidBreaker to suffer such damages to its operation, reputation and goodwill.

**Answer:** Denied.

121.    Upon information and belief, MIFAB willfully engaged in one or more deceptive trade practices.

**Answer:** Denied.

122. As a direct and proximate result of MIFAB's unlawful acts, Liquid Breaker has been damaged in an amount to be determined at trial.

**Answer:** Denied.

**Count 8 -- (Federal False Advertising under the Lanham Act) Allegation:**

123. LiquidBreaker incorporates herein by reference the foregoing paragraphs 50-122, as if fully set forth below.

**Answer:** Counterclaim-Defendants restate the answers set forth in paragraphs 59-122 above. No answer or response is required for paragraphs 50-58.

124. In marketing and selling its Green Drain products, MIFAB has used in interstate commerce literally false and/or misleading statements, descriptions and representations with respect to the parties' respective products, in violation of 15 U.S.C. § 1125(a).

**Answer:** Denied.

125. MIFAB made the false and/or misleading statements, descriptions and representations for the purpose of misleading distributors, representatives, retailers, consumers and others, as alleged *supra*. Specifically, MIFAB has advertised the Green Drain System under its "MI-GARD" mark while wrongfully claiming, orally and in print materials (1) a purportedly lawful right to sell the Green Drain System as its own certified product; and (2) a purportedly lawful right to the Patent under which it is claiming to sell an allegedly patented product. MIFAB indisputably knows these assertions are false and/ or misleading, as MIFAB had expressly surrendered any right to branding of the Green Drain System and knowingly has no right to the Patent. Despite demand, MIFAB willfully refuses to cease from this course of conduct, to LiquidBreaker's continuing and extreme detriment.

**Answer:** Denied.

126. MIFAB 's false and/or misleading statements, descriptions and representations are material, in that they are likely to influence the purchasing decisions of consumers of its products.

**Answer:** Denied.

127. MIFAB's misconduct was willful and wanton.

**Answer:** Denied.

128.    As a direct and proximate result of MIFAB's unlawful acts, MIFAB has been damaged in an amount to be determined at trial.

**Answer:** Denied.

129.    Unless enjoined by the Court, MIFAB's unlawful acts will continue to cause irreparable damages, loss and injury to LiquidBreaker for which it has no adequate remedy at law.

**Answer:** Denied.

## Count 9 – (Conversion)

130.    LiquidBreaker incorporates herein by reference the foregoing paragraphs 50-129, as if fully set forth below.

**Answer:** Counterclaim-Defendants restate the answers set forth in paragraphs 59-129

above. No answer or response is required for paragraphs 50-58.

131.    Conversion is any act of dominion wrongfully exerted over another's personal property. There must exist an actual interference with one's ownership or right of possession. The elements of a conversion claim are: (1) the owner's ownership or right to possession of the property; (2) the tortfeasor's conversion by a wrongful act or disposition of property rights; and (3) damages resulting from the conversion. A manual taking of the property is not necessary; it is only necessary to show an assumption of control or ownership over the property, or that the alleged converter has applied the property to his or her own use. In an action for conversion, the fact that the amount of damage may not be susceptible of exact proof does not bar recovery.

**Answer:** Paragraph 131 of the Counterclaims states legal conclusions to which no

response is required.

132.    Under the present facts, LiquidBreaker has an interest in its property capable of precise definition, and upon which it would have and could have maintained exclusive possession or control, and to which LiquidBreaker has established a legitimate claim to exclusivity. LiquidBreaker submits that at least the Patent and the said trade secrets and confidential information, *supra,* meet this definition.

**Answer:** Denied.

133.    MIFAB has wrongfully exercised dominion and control over and/or has assumed ownership and control of LiquidBreaker's Patent via false statements and false marking and over the said trade secrets and confidential information via tortious misconduct. Specifically, MIFAB has asserted that it owns the Patent and has advertised its

- 22 -

own-branded Green Drain System products as purportedly patented by virtue of the Patent, and has used its assumption and control of the Patent for its own purposes and moreover to prevent LiquidBreaker from certifying the Green Drain System with IAPMO -- thereby causing substantial and increasing damages to LiquidBreaker. And, MIFAB has exercised unlawful dominion and control over LiquidBreaker's trade secrets and confidential information-- thereby causing substantial and increasing damages to LiquidBreaker.

**Answer:** Denied.

134.    A conversion does not require a conscious wrongdoing. It requires, rather, an intent to exercise dominion or control over the goods which is in fact inconsistent with the owner's rights. Despite multiple demands, MIFAB has continued to interfere with LiquidBreaker's rights, and to assert unlawful dominion and control over LiquidBreaker's property -- and all to LiquidBreaker's exclusion, detriment and damage.

**Answer:** Denied.

135.    LiquidBreaker is entitled (i) to injunctive relief to prevent further imposition of control over its property, (ii) to a constructive trust, and (iii) to an equitable lien, as an unjust enrichment is yet further implicated.

**Answer:** Denied.

## Count 10 – (Unjust Enrichment)

136.    LiquidBreaker incorporates herein by reference the foregoing paragraphs 50-135, as if fully set forth below.

**Answer:** Counterclaim-Defendants restate the answers set forth in paragraphs 59-135

above. No answer or response is required for paragraphs 50-58.

137.    A person who has been unjustly enriched at the expense of another is required to make restitution to the aggrieved party. A claim of unjust enrichment requires receipt of a benefit and unjust retention of the benefit at the expense of another.

**Answer:** Paragraph 137 of the Counterclaims states legal conclusions to which no

response is required.

138.    Under the facts set forth herein, it would be unjust for MIFAB to retain the benefit received without compensation to the other party. MIFAB has been unjustly enriched, at the very least to the extent of any and all profits it has made of the Green Drain System subsequent to its execution of the Termination Agreement on December 1, 2014, and upon information and believe prior thereto based upon MIFAB 's conspiratorial and fraudulent misconduct. MIFAB 's unjust enrichment has been at LiquidBreaker's expense, and the

circumstances are such that, as between the two entities, it is unjust for MIFAB to retain these wrongful benefits.

**Answer:** Denied

139.   LiquidBreaker is therefore entitled to imposition of a constructive trust and compensatory damages as allowed by law.

**Answer:** Denied.

## Count 11 – (Injunctive Relief)

140.   LiquidBreaker incorporates herein by reference the foregoing paragraphs 50-139, as if fully set forth below.

**Answer:** Counterclaim-Defendants restate the answers set forth in paragraphs 59-139 above.

No answer or response is required for paragraphs 50-58.

141.   MIFAB's wrongful conduct, unless and until enjoined and restrained by order of this Court will cause great and irreparable injury to LiquidBreaker, in that MIFAB will continue unlawfully to use the misappropriated trade secrets and confidential information, and the converted Patent marking -- all of which belong to LiquidBreaker -- and MIFAB will thus also continue to violate its obligations under the Termination Agreement, and will yet further continue to engage in libelous representations to the relevant public concerning LiquidBreaker and its products.

**Answer:** Denied.

142.   LiquidBreaker has no adequate remedy at law for the injuries that are threatened, as without an injunction MIFAB has demonstrated that it will continue to engaged in this misconduct. Therefore, LiquidBreaker prays for: 1) an order requiring MIFAB to show cause why they should not be preliminarily enjoined as set forth herein during the pendency of this action; 2) a temporary restraining order, a preliminary injunction, and a permanent injunction, all enjoining MIFAB, and each of them, and their affiliates, agents, servants, and employees, and all persons acting under, in concert with, or for, them from:

> a. Asserting that MIFAB had purportedly "won" the Prior Adversary Proceeding;
>
> b. Claiming ownership of, or any interest in, the Patent;
>
> c. Asserting that MIFAB had unilaterally terminated the EDA;

- 24 -

d. Asserting that LiquidBreaker has breached the EDA and/or cannot be trusted to do business with;

e. Branding any Green Drain System products with its own mark;

f. Manufacturing any further Green Drain System products and using any trade secrets and/or confidential information acquired during the term of its licensing agreement with LiquidBreaker by virtue of the EDA; and

g. Making any statements relative to the termination of the EDA, except that "MIFAB and LiquidBreaker have agreed to terminate the Distribution Agreement".

**Answer:** Denied.


## Count 12 – (Accounting)

143.    LiquidBreaker incorporates herein by reference the foregoing paragraphs 50-142, as if fully set forth below.

**Answer:** Counterclaim-Defendants restate the answers set forth in paragraphs 59-142

above.  No answer or response is required for paragraphs 50-58.

144.    As a result of the aforementioned, MIFAB has received money, a material portion of which is due to LiquidBreaker from MIFAB, as previously alleged.

**Answer:** Denied.

145.    The amount of money due from MIFAB to LiquidBreaker is unknown and cannot be ascertained without an accounting of the credits and debits, receipts and disbursements of the aforementioned transactions. LiquidBreaker is informed and believes, and thereon alleges that the amount due to it exceeds $1,000,000.

**Answer:** Denied.

146.    LiquidBreaker hereby respectfully demands an accounting of the aforementioned transactions from MIFAB and payment of the amount found due.

**Answer:** Counterclaim-Defendants deny that LiquidBreaker is entitled to the demanded

accounting or payment of the amount found due.

147.    Counterclaim-Defendants deny each and every other allegation in the

Counterclaims not specifically admitted, denied or otherwise controverted herein.

## LIQUIDBREAKER'S PRAYER FOR RELIEF

Counterclaim-Defendants deny that LiquidBreaker is entitled to any of the relief requested in its Prayer for Relief.

## DEFENSES

Without prejudice to the denials set forth herein, and without assuming any burden of proof which they would not otherwise bear, Counterclaim-Defendants assert the following defenses:

## FIRST DEFENSE

The Counterclaims fail to state a claim upon which relief can be granted.

## SECOND DEFENSE

The Court lacks personal jurisdiction over Michael Whiteside, Mike Bellavance and Tom Willis as they are not parties to the complaint; no summons has been issued against them; and they have not been served with a summons or other pleading.

## THIRD DEFENSE

The Counterclaims fail to allege fraud with particularity as required by Fed. R. Civ. P. 9(b).

## FOURTH DEFENSE

LiquidBreaker has failed to describe its purported trade secrets and confidential information with adequate and reasonable particularity and specificity.

## FIFTH DEFENSE

LiquidBreaker's alleged trade secrets and confidential information are vague and ambiguous and, therefore, cannot constitute trade secrets and confidential information.

## SIXTH DEFENSE

LiquidBreaker has failed to take adequate steps to protect its purported trade secrets and confidential information.

## SEVENTH DEFENSE

LiquidBreaker's alleged trade secrets and confidential information are or were publicly known, readily ascertainable, already known by Counterclaim-Defendants and/or independently developed by or for Counterclaim-Defendants.

## EIGHTH DEFENSE

LiquidBreaker's claims are barred, in whole or in part, by the terms of the EDA and/or the Termination Agreement.

## NINTH DEFENSE

LiquidBreaker's claims are barred, in whole or in part, by virtue of its own breach of the EDA and/or the Termination Agreement.

## TENTH DEFENSE

LiquidBreaker's claims are barred, in whole or in part, by the doctrine of unclean hands.

## ELEVENTH DEFENSE

LiquidBreaker has failed to make reasonable efforts to mitigate its damages, if any.

## TWELVTH DEFENSE

The information or property allegedly converted by Counterclaim-Defendants may be easily acquired or duplicated without extraordinary effort.

### THIRTEENTH DEFENSE

Some or all of the statements alleged to constitute trade libel or false advertising were true, were statements of opinion and/or were not misleading.

### FOURTEENTH DEFENSE

LiquidBreaker has an adequate remedy at law.

### FIFTEENTH DEFENSE

The Counterclaims fail to allege any specific claims against, or any specific unlawful actions by, the individual defendants Michael Whiteside, Mike Bellavance and Tom Willis.

### SIXTEENTH DEFENSE

Counterclaim-Defendants presently have insufficient knowledge or information upon which to form a belief as to whether Counterclaim-Defendants may have additional, yet unstated, defenses.   As such, Counterclaim-Defendants reserve the right to assert additional defenses in the event discovery indicates that additional defenses are appropriate.

### JURY DEMAND

Counterclaim-Defendants demand a jury trial on all issues so triable.

### PRAYER FOR RELIEF

WHEREFORE, Counterclaim-Defendants pray that the Court enter judgment in their favor and against LiquidBreaker and grant relief as follows:

(A)     Dismiss the Counterclaims;

(B)     Enter Judgment against LiquidBreaker and in favor of Counterclaim-Defendants with respect to all relief requested in the Counterclaims;

(C)     Enter Judgment in favor of Counterclaim-Defendants and against LiquidBreaker with respect to all relief requested in the Complaint;

(D)     Order that LiquidBreaker, its agents, distributors, officers, employees, representatives, and anyone working for, in concert with or on behalf of the foregoing, be preliminarily and permanently enjoined from engaging in false or misleading advertising in violation of 15 U.S.C. § 1125(a), which relief includes but is not limited to removal of false or misleading advertising and statements, and corrective advertising and statements to remedy the effects of LiquidBreaker's wrongful actions;

(E)     Order that LiquidBreaker, its agents, distributors, officers, employees, representatives, and anyone working for, in concert with or on behalf of the foregoing, be preliminarily and permanently enjoined from engaging in deceptive trade practices in violation of Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510 *et seq.* which relief includes but is not limited to removal of false or misleading advertising and statements, and corrective advertising and statements to remedy the effects of LiquidBreaker's wrongful actions;

(F)     Order that LiquidBreaker, its agents, distributors, officers, employees, representatives, and anyone working for, in concert with or on behalf of the foregoing, be preliminarily and permanently enjoined from engaging in further acts of unfair competition;

(G)     Declare and Order that Counterclaim-Defendants have not and do not infringe any intellectual property rights of LiquidBreaker, and that Counterclaim-Defendants do not require a license or authorization from LiquidBreaker to sell MI-GARD products;

(H)     Enjoin LiquidBreaker, its officers, employees, agents, representative, licensees and all those in privity therewith from asserting any intellectual property rights against Counterclaim-Defendants, or their customers, distributors, affiliates and all others in privity with Counterclaim-Defendants with respect to MIFAB's MI-GARD products;

(I)     Award MIFAB damages in an amount to be determined by the Court for LiquidBreaker's false and misleading advertising and statements, unfair competition and deceptive trade practices;

(J)     Order that such damages be trebled as a result of LiquidBreaker's willful, intentional and deliberate acts pursuant to 15 U.S.C. § 1117;

(K)     Award MIFAB punitive damages under 85 ILCS 505/10a;

(L)     Award Counterclaim-Defendants their costs, expenses and reasonable attorneys' fees in this action; and

(M)     Grant such other and further relief as the Court deems appropriate.


Dated:  July 27, 2015                                   Respectfully submitted,

                                        By: _____s/ Michael J. Berchou_____
                                             One of Their Attorneys

Michael J. Berchou
PHILLIPS LYTLE LLP
One Canalside
125 Main Street
Buffalo, New York 14203
(716) 847-8400
Fax: (716) 852-6100
mberchou@phillipslyte.com

**<u>CERTIFICATE OF SERVICE</u>**

       I hereby certify that I electronically filed the foregoing document on July 27, 2015 using

the CM/ECF system, which will send notification of such filing to all attorneys of record.


                                                          _____ s/ Michael J. Berchou_____

Doc #01-2878901.1